FILED
 2020 Nov-10  PM 03:47
U.S. DISTRICT COURT
    N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

|  |  |
|---|---|
| ANTHONY D. EATON, | ) |
|  | ) |
| Plaintiff, | ) |
|  | )   7:20-cv-00035-LSC |
| v. | ) |
|  | ) |
| NATIONAL OLDER | ) |
| WORKER CAREER CENTER, | ) |
|  | ) |
| Defendant. | ) |

## MEMORANDUM OF OPINION

Pro se plaintiff Anthony Eaton sued the National Older Worker Career Center (NOWCC) under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, and Title I of the Americans with Disabilities Act, 42 U.S.C. § 12112 *et seq.* (Doc. 1 at 3.) NOWCC's motion to dismiss is before the Court. (Doc. 2.) The motion's sole argument is that Eaton was never a NOWCC employee and, therefore, that he cannot sue NOWCC under federal employment-law statutes. (*Id.*) For the reasons explained below, NOWCC's motion is due to be granted.

## STANDARD OF REVIEW

Because Eaton is pro se, the Court liberally construes his complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Still, even pro se complaints must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The evaluation process has two steps. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court "begins by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Then, the Court "assume[s] [the] veracity" of well-pleaded factual allegations. *Id.* If those well-pleaded factual allegations raise the plaintiff's "right to relief above the speculative level," the plaintiff's claim survives 12(b)(6) scrutiny. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Stated differently, "a complaint must plead enough facts to state a claim to relief that is plausible on its face." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1348 (11th Cir. 2016) (quoting *Twombly*, 550 U.S. at 570).

## FACTS[1]

Eaton is a fifty-nine-year old African American who has Reactive Airway Disease. In 2019 he enrolled in the Agriculture Conservation Experienced Services

---

[1] Here, at the motion-to-dismiss stage, this Court "accept[s] the allegations in the complaint as true and construe[s] the facts in the light most favorable to the plaintiff." *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1275 (11th Cir. 2012). Therefore, these facts are taken from Eaton's complaint, and the Court makes no ruling on their veracity.

Program (ACES)—a federal, statutorily established program that places workers aged over 55 with USDA conservation programs.[2] (Doc. 1 at 5.) The National Resources Convention Service (NRCS) is one such USDA "conservation program." While working at NRCS's location in Eutaw, Alabama, Eaton says his supervisor made him do the work of a white coworker, assigned him "unrealistic and unreasonable" workloads and deadlines, treated him differently than Caucasian employees, and unlawfully terminated him. (*Id.*) Liberally construing Eaton's complaint, he alleges two facts relevant to NOWCC.[3] (*Id.*) First, he says he complained to a Mrs. Pamela Lewis, NOWCC's "ACES Recruiter," about the alleged discrimination. (*Id.*) Second, he says Mrs. Lewis terminated him and wrote him a follow-up termination letter. (*Id.*) Beyond these two allegations, NOWCC's place in the ACES/NRCS scheme remains a mystery. (*Id.*)

---

[2] Title 16, Section 3851 of the United States Code directs the Secretary of Agriculture to "establish an experienced services program . . . to provide technical services in support of the programs and authorities carried out by the Secretary." Although the pleadings are less than clear, the Court believes the "program" mentioned in § 3851 is ACES.

[3] NOWCC's 12(b)(6) motion points the Court to an online "detailed explanation" of the NRCS/NOWCC/ACES relationship. (Doc. 2 at 2.) At this stage, looking beyond the pleadings to an online source is not appropriate. *See Starship Enters. of Atlanta, Inc. v. Coweta Cnty., Ga.*, 708 F.3d 1243, 1252 n. 13 (11th Cir. 2013).

## ANALYSIS

Relying on 16 U.S.C. § 3851, NOWCC argues Eaton was not its employee and, therefore, that he cannot hold it liable under Title VII, the ADEA, or Title I of the ADA. (Doc. 2 at 2.) NOWCC is correct in part and incorrect in part. NOWCC is correct that Title VII, the ADEA, and Title I of the ADA protect employees, not independent contractors or non-employee enrollees. *Cobb v. Sun Papers, Inc.*, 673 F.2d 337 (11th Cir. 1982) (affirming dismissal of Title VII claim because the plaintiff "was an independent contractor and hence not protected by Title VII"); *Ashkenazi v. S. Broward Hosp. Dist.*, 607 F. App'x 958, 961 (11th Cir. 2015) ("To seek relief under the ADEA, a plaintiff must be an employee."); *see PGA Tour, Inc. v. Martin*, 532 U.S. 661, 678 (2001) (explaining how Title I of the ADA applies to employees and not independent contractors). However, NOWCC's reading of § 3851 oversimplifies the statute. Section 3851 says only two things about the employment status of ACES participants. First, it says ACES participants "are not employees of the Department of Agriculture or a State agriculture department." 16 U.S.C. § 3851(a). Second, it says some ACES participants are "deemed to be an employee of the United States Government for purposes of chapter 171 of Title 28." 16 U.S.C. § 3851(d). But because NOWCC is neither the Department of Agriculture nor a state agriculture department, and because Eaton's claims do not arise under 28 U.S.C. §

171, § 3851 has little bearing on whether Eaton was a NOWCC employee. *Cf. Gross Motels, Inc. v. Safemark Sys., LP*, 931 F.3d 1094, 1102 (11th Cir. 2019) ("Nothing is to be added to what the text states or reasonably implies . . . .") (quoting Antonin Scalia & Bryan Garner, *Reading Law* § 6, at 70 (2012)).

Although § 3851 does not conclusively determine Eaton's employment status, Eaton did not plead enough facts to raise his right to relief "above the speculative level." *Twombly*, 550 U.S. at 555. His complaint alleges only two facts about NOWCC: that he complained to a NOWCC recruiter and that the same recruiter terminated him.[4] (Doc. 1 at 5.) Alone, those allegations do not "state a claim to relief that is plausible on its face." *Spirit Airlines*, 836 F.3d at 1348. For instance, to qualify as an "employer" under Title VII a defendant needs "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b). Under the ADEA an "employer" "has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 29 U.S.C. § 630(b). And the ADA defines "employer" as "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more

---

[4] Eaton's complaint also says he "began employment with the National Older Workers Career Center and the U.S. Department of Agriculture joint employers." (Doc. 1 at 5.) This, however, only states the legal conclusion that Eaton was a NOWCC employee. Such legal conclusions "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 678.

calendar weeks in the current or preceding calendar year." 42 U.S.C. § 12111(5)(a). Eaton's complaint, however, alleges nothing about the number of employees NOWCC has. (Doc. 1 at 5.) With no allegation about NOWCC's size, the Court can only guess as to whether NOWCC is an entity covered by the three statutes supplying what Eaton contends are his causes of action.

In addition to not pleading sufficient facts about NOWCC's status as an employer, Eaton did not plead sufficient facts about his own status as an employee. To separate employees from non-employees for Title VII purposes, the Eleventh Circuit looks to "the economic realities . . . viewed in light of the common law principles of agency and the right of the employer to control the employee." *Cobb*, 673 F.2d at 341. That analysis considers, among other things,

> (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; i.e., by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.[5]

---

[5] Although *Cobb* considered whether the plaintiff was an employee or an independent contractor, the Eleventh Circuit later expanded *Cobb*'s analysis to other Title VII classification disputes. *See Cuddeback v. Fla. Bd. of Educ.*, 381 F.3d 1230, 1234 (11th Cir. 2004) (using *Cobb*'s test to determine whether a graduate-student research assistant was a student or employee).

*Id.* (quoting *Spirides v. Reinhardt*, 613 F.2d 826 (D.C. Cir. 1979)). In *Clackamas Gastroenterology Associates, P.C. v. Wells*, the Supreme Court used a multi-factor, common-law agency test to determine whether the plaintiff was an employee under the ADA. 538 U.S. 440, 448. And while the Eleventh Circuit has not decided which "employee" test applies in the ADEA context, *Daughtrey v. Honeywell, Inc.*, 3 F.3d 1488 (11th Cir. 1993), these common-law factors are likely relevant there as well. *See Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1265 (11th Cir. 1997) ("Both Title VII and ADEA's definitions of 'employees' are virtually identical."). Without knowing more than who terminated Eaton and to whom Eaton complained, the Court cannot weigh common-law factors or plausibly conclude that Eaton was a NOWCC employee. The Court can only guess if and how these factors apply.

Even though the Court liberally construes pro se complaints, *all* complaints must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Because Eaton alleged no facts about the number of employees NOWCC has, and because Eaton's allegations do not raise his status as an employee "above the speculative level," NOWCC's motion to dismiss is due to be granted.

## CONCLUSION AND ORDER

As explained above, NOWCC's motion to dismiss (Doc. 2) is due to be granted. Regardless, Eaton has twenty-one (21) days to file a motion to amend his complaint to remedy the deficiencies of his original complaint if he is actually able to allege such facts in good faith. Eaton must attach his amended complaint to his motion. Should Plaintiff fail to make such an amendment in the time allotted, this case will be dismissed with prejudice.

**DONE** and **ORDERED** on November 10, 2020.

_____
L. Scott Coogler
United States District Judge

203323